is 161572 Garmin v. ITC. I mean, I don't mind if you want to sit there. It's going to confuse me because I have my mindset on who says what when, but no, you don't have to move. But we will start with Mr. Groombridge. Your Honor, I will speak first about the claim construction issue and then about the validity issue. Can I just ask you a kind of preliminary question? Let's assume for a moment that we were to agree with the Commission's claim construction, that there's a little confusion for me in these cases because there's some overlap. So with regard to the invalidity questions that are presented in this appeal, I guess there's no overlap with the earlier case because they were dealing with certain claims on the 550. But here, clarify for me, the other case we were clearly talking about an obviousness combination of Tucker and Betts. What are we talking about here with respect to invalidity? Are we talking about anticipation under Tucker or are we also talking about an obviousness? I think we're talking about both, Your Honor. We're talking about some claims being anticipated by Tucker and some claims being obvious. And is it clear to you that you preserved the obviousness contentions with respect to Betts on appeal to the Commission? Because I was having a little trouble putting together the record. Or is there an assertion by the other side as you understand that? I guess we'll hear from them. Well, Your Honor, I think the Commission found that it was obvious for purposes of the claims of the 550 patent that they held to be invalid. They found that it was obvious to combine Tucker and Betts. Yeah, but we're not dealing with that issue in this case. The question, what the Commission found is that the processor limitation wasn't obvious. And I don't think it was obvious in the question there is whether you have to rely on Tucker alone or whether you can rely on Betts as well for the processor limitation, right? I believe we, I mean, my view is we did preserve that, that in response to The reliance on Betts. Yeah, the reliance on Betts. In other words, of saying that in response to the Commission's question of what would be to the parties of what would be the validity consequences. Okay, well, I've got you sidetracked, so why don't you proceed. While we're on this, and maybe it makes sense to talk about validity. It's our view, first of all, that having found that Tucker, it does disclose that there is a possibility that there was a single linear downscan transducer element. There's no real stopping point. Tucker clearly also discloses a sonar signal processing means, the sonar signal processor in the sense that it takes the echoes that come back from the sonar and processes that as a signal and then outputs that to a printer to create visual images and it says you could use a cathode ray tube if you wanted to, but figures 12 through 15 are visual images that are created by that apparatus and figures 9 and 10 are the circuit diagram for the sonar signal processor. It talks about what's being processed as a signal there. Therefore, having got as far as that, we don't see any way in which you could stop and now say Tucker doesn't disclose some means of processing this. It's clearly a signal. It's clearly being processed and it's being processed so it can be fed to a device that will display it graphically. And that signal is a sonar echo that is processing? Yes. It's an electrical signal that is coming back from the transducer. So in our view, I don't know how to say it more simply, in other words, it seems that that's just what it is. It's not a quote down scan sonar signal processor and we view that as being wrong in several regards. First of all, the claim limitation isn't a down scan sonar signal processor. It's a sonar signal processor. Second of all, that's kind of a semantic argument in the sense of the signal processor processes a signal. It's a down scan signal if you feed in from a down scan sonar transducer. And having found that Tucker is exactly that, then it is by definition a down scan sonar signal processor. When the transducer of Tucker is rotated downwards, it's now a down scan transducer and the signal is coming back as a down scan signal. Is that in contrast to a phased array, what your friend ended up talking about last time? In our view, Tucker is a phased array and that leads back into what we see as the problem with the commission's construction here. Well, isn't that problematic for you because assuming we agree with the commission's construction that the phrase at issue excludes phased arrays, then doesn't that give you a problem in terms of your validity argument on Tucker? No, Your Honor. Phased arrays can act simultaneously and in phase. They can also act differently. But the commission inserted a functional limitation here into the claim construction. Act simultaneously and in phase. Phased arrays can absolutely do that. The fact that they can operate out of phase as well in no way detracts from their ability to communicate. If you look at Tucker, for example, Tucker has three channels that control the transducer and you can vary those. But in the one, one, one configuration where we're applying equal power to each of the three channels, it's acting simultaneously and in phase. And so, and this is the point that to us, one of the things that's wrong with the commission's construction is that even though its ostensible purpose is to distinguish phased arrays, it fails to do that. Because the phased array can perform the simple functionality of a single element, but it can also, which is what that language, act simultaneously and in phase, is apparently intended to embrace, it can also perform more complicated functionality. By putting a functional limitation in there, it failed to distinguish the prior item. I'm not understanding this somewhat convoluted argument about infringement. I don't get it. Could you state it more simply? Infrin- about claim construction, Your Honor? Yeah, claim construction. Yes, I'll try. The, I think we, everyone agrees that the- The commission says that phased arrays are not within its claim construction, right? I think the commission never actually says that. I think what the commission did was to try to come up with language that would, that would, that would, that would, that would capture the minimum set of things that had been distinguished in the prosecution. But I think that the, that the language that the commission came up with fails to do that. And- Isn't the claim construction issue whether it has to have the identical beam pattern? I mean, isn't that- I'm sorry? Isn't the claim construction depend on whether it requires an identical beam pattern? No, Your Honor. In our view, the beam pattern is the second step of the infringement analysis. The, the key language- Does it have to have the same beam pattern? To act together as if they were a single crystal or element means that it has to have a beam pattern. The same? Well, as close as it can, essentially the same. I don't think it can be identical. There's a slight difference because there are, because of the joints in the multiple element. But in our view, Your Honor, this language, when they added the single part of the claim language, they said it's well known in the transducer field that a plurality of such crystals can be arranged and can be electrically connected to circuitry such that the plurality of crystals act together as if they were a single crystal or element. What that was telling the skilled person was it's totally okay to make this single transducer element out of multiple pieces, but you should wire them in such a way that they approximate or resemble a single crystal to the greatest degree possible. That's what that language says, and that's what everybody who ever looked at this before the commission thought that was the appropriate construction of single in single linear downscan transducer element. We have this, and in our view, this is a very serious public notice function question here because it appears that as far as we can tell the first time that the words act simultaneously and in phase or ever put down in writing somewhere is when the commission comes up with its construction even though lots of people have looked at this record and tried to come up with it. Well, I'll tell you, to be frank, and this isn't anybody's fault, but I've hardly, this is a very convoluted claim construction argument presented. I mean, we've got like seven different alternative constructions that have been used along the way, and then when we get down to the entire construction, the entire phrase, it seems like we're really analyzing the word single versus others. So it's very difficult to follow when we start talking about all these different constructions. It's a very confusing thing. I apologize for the confusion, but I think they all say operating as a single substantially rectangular element, and that would seem to be the common thread in all of those constructions. Certainly, none of them prior to the commission's construction said act simultaneously and in phase. Okay, why don't we hear from the other side and reserve the rest of your time for rebuttal. May it please the court. As your Honor recognizes, the claim construction dispute centers on how the crystals forming a single transducer must function or operate. Garman insisted in its briefs that its construction is broad, but it is actually very narrow. As Mr. Groombridge admitted, its construction requires that the crystals operate in such a way so as to produce the same beam pattern as a monolithic bar, and there is absolutely no support in the intrinsic record for that requirement. But when you talk about Mr. Groombridge's claim construction, you talk about the ALJ's claim construction. Yes, which the ALJ adopted Garman's construction, and the ALJ understood, just as the commission did, that Garman's construction requires analysis of the beam pattern. Now what is more, Garman's construction presents a gotcha. Garman's construction essentially restricts the term to a monolithic bar, because as the record shows, the only thing that can operate like a monolithic bar and produce the same beam pattern as a monolithic bar is a monolithic bar. Now the commission's construction correctly construed the term single linear downscan transducer element consistently with the intrinsic record to encompass a single transducer formed of a plurality of crystals in which the plurality of crystals act together simultaneously and phase as if they were a single crystal. That requirement corresponds to arguments made by the applicant during the prosecution of the 840 patent. And in particular, the applicant explained at APPX 4392 that the transducer may be formed of a plurality of crystals such that the plurality of crystals act together as if they were a single crystal or element. Also on that page... Just to kind of simplify things, at least for me anyway, given all the different claims and instructions that are involved here, I don't understand your argument why the Tucker reference does not disclose a single processor. I mean, there's a circuit for receiving a single, for processing a single, for plotting and even for printing out, you can print out the single. Why is that not a processor? It is not a processor because there's no express disclosures that correspond to the sonar signal processor limitation and the required functions as to those limitations. I don't understand that answer. I mean, the patent includes a very broad description of what's a processor. Basically, it's something that displays the results of the transducer information. What is the argument as to how Tucker doesn't disclose the processor so broadly defined? Tucker does not contain express disclosures of the required... Why does it have to be expressed? Why do they have to use the word processor? It has to be expressed because that's the argument that Harmon presented. It never argued that Tucker inherently discloses the required sonar signal processor limitation. But it discloses the display. It says it takes the information. It gives detailed information about how it creates a display. I don't understand. Harmon did not make those arguments. And there's no record, no evidence in the record from a showing, from an expert, showing that a person having ordinary skill in the art... Put that aside. Doesn't Tucker disclose a processor under the definition of the patent? It does not expressly disclose it. And the commission was not in a position to assume that Tucker disclosed the sonar signal processor limitation. I don't know. What does expressly mean? It has to use the word processor? It does not have to use the same word. If there's no processor, then how is the data generated? Again, this argument sounds of an inherent disclosure argument, which Garmin never made. It never pointed to any expert testimony that would suggest that a person having ordinary skill in the art would read Tucker and understand Tucker to necessarily include the sonar signal processor. Would you agree with me that under Tucker embeds that we have a circumstance where there's output data that's generated and analyzed? I would agree with Your Honor that Tucker does output data. Yes. How is that processed then? How is that processed if there's no... How do you have the output data if there's no processor? These are good questions, Your Honor, but it's not answered by Tucker. And so as the commission noted in its opinion, expert testimony would have been helpful for Garmin to establish by clear and convincing evidence that Tucker discloses the required sonar signal processor limitation. Now, Your Honor, Judge Prose had mentioned FETs earlier. I do want to make... Wait, wait, but look, on the face of it, Tucker says here's the data. It processes the data. It creates a display. I mean, how could that not be a processor? Garmin was unable to point to the specific parts of Tucker that discloses the required functions of the processor, and that's the evidence that the commission considered. There's not a single... Garmin submitted a 270-page expert witness statement on invalidity, and there is not a single statement there that mentions or shows that Tucker discloses the sonar signal processor. How else can you generate output data if you don't have a processor? That's something that Garmin should approve because that's what's required by the claims. On the face of it, it talks about processing the data. On the face of it, Tucker does not disclose receiving signals representative of sonar returns and processing the signals to generate sonar image data. I disagree with you, but there it is. And on the issue of BETS, Garmin first argued to the ALJ that BETS discloses a sonar signal processor limitation. The ALJ disagreed and found that there was no such disclosure in BETS. Now, Garmin should have known then that BETS was an issue but did not challenge the ALJ's finding on a petition to review for the commission. So any arguments as to BETS are waived. Also, Garmin never argued to the commission any obviousness arguments to show that the required sonar signal processor limitation was satisfied but what was known by a person of ordinary skill in the art. Thus, substantial evidence supports the commission's finding that the prior art does not disclose or teach the required sonar signal processor. If there are no further questions, we ask this court to affirm the commission's determination for the reasons stated here and in our brief. Thank you. Thank you. May it please the court. First, I want to address the Tucker reference. It's an analog system from 1961. The strength of the electrical pulse that it receives causes a needle to move and it draws a very sketchy and unclear picture on the graph paper. There is no processor at all in Tucker. It is not receiving or processing data. The specification says that a processor can be hardware. An analog system is hardware, right? The processor limitation as described in the specification of the Navico patents refers to a particular processor that processes. It has a very broad definition of processor and it says it can be hardware, doesn't it? It can be hardware or software implemented, but it has to be able to process linear downscan sonar data signals. And Tucker, as Mr. Greenbridge has acknowledged, isn't the right type of system. It's a phased array system. There was no commission finding that it was or was not. The parties agree that it is. Tucker cannot possibly be part of these claims anymore. They cannot apply. Phased array systems were known in the prior art. They were clearly distinguished during prosecution, repeated again in the IPR. Tucker is irrelevant for that reason. It's irrelevant because it lacks a sonar signal processor or at least we have a failure of proof, as the commission found, that's supported by substantial evidence and must be affirmed. Also, as my colleague mentioned, Tucker explains to the mathematics that's in Tucker that the maximum angle that it could be pressed from the horizon is 30 degrees. But that's not the processor argument. That's the argument that we had in the last case. Correct, but it shows all the reasons why the commission's findings that these claims are valid is supported by substantial evidence. In addition to the processor aspect, Tucker is not relevant because it's a phased array. The math makes it impossible for it to do what's claimed in the Navico claims. On top of that, the combination with Betz fares no better. Betz, admittedly, lacks any linear downscan transducer element. It's a side-scan system. Its processor doesn't process linear downscan sonar signals. There was no claim that it did. The ALJ ruled against Garmin on that point and said there's no processor. Garmin did not appeal that finding to the commission. The commission said Garmin waived it. The commission also found that there was no proof that Betz has a processor. Therefore, the combination of Betz and Tucker fare no better. On the issue, and I also want to mention the dependent claims, there is no allegation by Garmin, same as they did to the commission. They never separately addressed the dependent claims. As we all know, when you're looking at invalidity, all the limitations count. And when you get to the dependent claims, there's not even an argument that those are met. At least the dependent claims ought to be affirmed, and clearly all of them should be affirmed because there's substantial evidence. On the issue of the claim construction, Mr. Groombridge said that he didn't believe the commission ever actually addressed whether phased arrays are excluded. And that's incorrect. They squarely addressed it, and they said so. The commission said at APPX 14 to 15 that the claims, quote, cover any multi-crystal downscan transducer except a multi-crystal phased array type transducer, close quote. The construction is understood in that context. Phased arrays are excluded. And that's no surprise. The parties agreed all along that phased arrays were excluded. And to a point made earlier, that necessarily excludes Tucker. If it's a phased array system, there were phased array systems in the prior art. They're shown in the figures of the patent and labeled prior art. Those phased array systems look straight down. That's different than the Navico patents. The Navico patent is much simpler. It doesn't have the complex electronics and phasing of a system like Tucker. During prosecution, the patentee distinguished the Hamada reference, which was one of these multi-element complex phased array systems, and they said we're not that. The transducer element can be made from a single piece, or it can be made from multiple pieces. If it's from multiple pieces, they act as a combined unit. They act simultaneously and in phase. They're not a phased array. There's a single channel going from that transducer element up to the head unit. There's not individually addressed multiple elements that are all emitting sonar energy and phasing and timing and adjusting the sort of way the Hamada reference was, the way Tucker does. Those are different systems. The commission got the claim construction correct here, and it ought to be affirmed. Next. I will mention that Garmin, in its reply brief, raises for the first time the notion of the patentee acting as its own lexicographer. That's the first time we've heard that argument, but it seems to me to be the same argument under a different heading. They're shying away from what was disavowed during the prosecution history in the IPR and trying to give it a new label of acting as your own lexicographer. Navico did not act as a lexicographer, and they certainly didn't act as a lexicographer to say that when you have a transducer element formed from multiple pieces, it must emit the same, or as he now says, sort of the same or kind of the same beam pattern as emitted by a monolithic bar. The prosecution history repeated in the IPR solely made the distinction of an element formed from multiple pieces as contrasted with a multi-element array, a multi-element phased array. In our situation, we have the former. The element can be formed from a single crystal or multiple crystals. It's not a phased array. That was the distinction. The commission's construction correctly captures these concepts and should be affirmed, unless there are questions. Thank you. Chief Judge, I was able to just check, and I think I can confirm that the obviousness argument of Tucker and Betts was preserved. The record at appendix 12414, that's the beginning page for a section titled All Asserted Claims of the 840 and 550 Patterns are Rendered Obvious by the Combination of Betts and Tucker. Where do you have that, Counselor? What's the citation? The citation is 12414, Your Honor. And this is a document that was Garmon's response to the questions posed by the commission. Yeah, but it's quite clear. I mean, the ALJ said that there's no processor. And what did you appeal? Your friend, I thought, was making the argument that you didn't appeal one of the findings of the ALJ, that Betts doesn't disclose a processor. Do you know what I'm referring to? I'm not sure. I don't want to take your button. We certainly, I think, when asked by the commission what would be the effect on validity of our proposed construction, we said all asserted claims of the 840 and 550 patterns would be valid for obviousness over the combination of Betts and Tucker. And so I think that we certainly preserved that argument. The operating under a different claim construction, the ALJ. Can you just answer me one question that's been going back and forth, and I'm sure it's just me and I don't understand it. If we adopt the, if we affirm the commission's claim construction which excludes phased arrays, and you say that Tucker is all about phased arrays, how can there be an invalidity finding of anticipation or obviousness or whatever? Because at least in its so-called 111 configuration, Tucker acts simultaneously and in phase. And I don't think anybody disputes that. So Tucker does act simultaneously and in phase. Absolutely, 100%. We can have a debate about whether it is or isn't a phased array. It certainly has the kind of wiring that goes into a phased array, but it acts simultaneously and in phase. And I don't believe there's any dispute over that. And so under the commission's construction, Tucker meets that claim limitation, single linear downscan transducer element. Well, and the commission found that, right? And the commission found that, Your Honor, exactly. And just with respect to our proposed construction, Ms. Noyola said it's a gotcha. I respectfully disagree with that. We're not saying that the only thing that can be covered is a monolithic crystal. What we're saying is that the skilled person reading that language in the prosecution history would say, I can take multiple components, multiple elements, I just need to wire them together. And in fact, you would wire them in parallel to make something that behaves essentially as a single crystal. And that's what you would do there. That's what that's teaching. So with that, I think I'm finished. Thank you. We thank both parties. And that case is submitted.